UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| LORI BARNES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 2:23-cv-00280-LEW |
| | ) |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | ) ) |
| | ) |
|     Defendant. | ) |

## **DECISION AND ORDER**

The matter is before the Court on competing motions for judgment on the administrative record. *Pl.'s Mot. for J. on the Admin. R.* (ECF No. 26); *Def.'s Mot. for J. on the Record for Judicial Review* (ECF No. 27). Plaintiff Lori Barnes contends in this action that Defendant Unum Life Insurance Company wrongfully discontinued her long-term disability benefits. Unum contends Barnes failed to persuade Unum's agents and consultants of her disability like she had done for the preceding twenty years.

### **BACKGROUND**[1]

Lori Barnes formerly worked for Unum as an executive account manager. She started working for Unum in 1996 and continued to work until pain and radiculopathy symptoms secondary to childhood scoliosis, degenerative disc disease, a 1992 lumbar laminectomy, a 1993 L5/S1 disc surgery, S1 nerve root impingement, and a 2002

---

[1] The background facts are drawn from the parties' factual statements and the underlying record.

discectomy at L5/S1 proved too much for her to manage in the workplace. Fortunately for Barnes, she had elected to participate in Unum's Long-Term Disability Plan, which Unum both administers and funds. To qualify for benefits under the Plan, Barnes needs to demonstrate, both initially and on a continuing basis, that her medical condition prevents her from performing her regular occupation.[2]

As an executive account manager, Barnes's regular occupation required her to, among other things, frequently stand, sit, and lift up to 10 (or 20[3]) pounds, as well as undertake frequent work-related, overnight travel to serve clients. When Unum's agents and consultants first considered Barnes's claim for benefits, and for nearly 20 years thereafter in the context of periodic claim-review process, they continuously found that Barnes's condition prevented her from performing her occupation, even after Unum first revised the requirements by concluding that the occupation required only sedentary exertional effort. In principle, this consistent history of approving Barnes's coverage under the Plan related to Barnes's inability to endure prolonged sitting due to back and leg pain.

Unum's consultants and physicians were not only consistent in their appraisal of Barnes's condition, but went so far as to opine that they did not anticipate that Barnes

---

[2] The Plan also provided that after 24 months of benefits Barnes would need to demonstrate that her medical condition still prevented her from performing any gainful occupation for which she was reasonably fitted by education, training, or experience. Unum has continuously reviewed the file to evaluate Barnes's ability to perform the occupation she preformed at Unum, and I do likewise.

[3] When Barnes first obtained disability benefits from Unum, her peers who reviewed her claim agreed that her position imposed "light" exertional demands involving lifting up to 20 pounds. Years later, as the narrative will explain, Unum gradually revised this assessment and redefined Barnes's former occupation as a sedentary occupation involving lifting of no more than 10 pounds.

would ever return to work due to the limitations imposed by and the permanence of her condition. Unum accepted these assurances, characterizing Barnes's limitation in terms of her inability to have "sustained capacity" due to chronic pain. Pl.'s App'x ¶ 74 (ECF No. 26-1). From 2013 through 2020, Unum even stopped collecting updated medical records from Barnes.[4] However, before taking this casual approach, Unum tasked one of its vocational consultants with the job of revisiting Barnes's job demands in terms of the light-versus-sedentary exertional capacity. The vocational consultant did so, basically by assessing that the position was most consistent with the position of "manager sales account," as defined in the Dictionary of Occupational Titles. LTD 319 (ECF No. 12-2). Although the consultant stated that the exertional requirement was sedentary as generally performed in the national economy, she separately observed that Barnes's occupation also required frequent traveling. LTD 318. She did not address whether the demands of frequent travel involve light or sedentary exertion or prolonged sitting, standing, or walking.

In August 2022, Unum requested that it be provided with an updated attending physician statement. Acting through claims specialist Andrew Hart, Unum sent Barnes's primary care physician, Melanie Fitzsimmons, MD, a letter stating that it needed the physician's input on a new "short-term disability claim" filed by Barnes. This had no basis in fact in terms of there being any new claim, let alone a claim for short-term disability.

---

[4] In 2021, Barnes underwent another spinal surgery, this time involving her cervical spine. Neither party contends that Barnes's entitlement to LTD benefits depends on the condition of her cervical spine.

3

LTD 841 (ECF No. 12-4).  Hart also requested that Barnes provide Unum with a written update of her condition, which she did.

Unum asserts that it is material to the case that Barnes reported in her written update that she is able to care for herself, does not need assistance with her daily activities (such as they are), and does not need an assistive device to walk.  Def.'s App'x ¶ 12 (ECF No. 27-1).  Unum also asserts that it is material that it was able to determine on its own that Barnes has a social media presence, donated to a fundraiser, likely has ridden in a boat at some point in time, and socialized with others.  *Id.* ¶ 14.

Unum also emphasizes that Barnes reported to Dr. Fitzsimmons during an October 2022 regularly scheduled wellness visit, that she was working out regularly (30 minutes, 4 days per week) on core strengthening and did some walking.  Also, at another routine wellness visit, Barnes denied experiencing fatigue, weakness, swelling, numbness or tingling at that time, but stated she was tired more than half of her days.  Def.'s App'x ¶ 17; Pl.'s Response to Def.'s App'x ¶ 17 (ECF No. 37-1).

In the lead-up to its 2022 review decision, Unum once more tasked one of its vocational consultants, Carrie Cousins, with the job of revisiting and potentially reassessing the vocational requirements of Barnes's job.  The instructions provided to Cousins requested that she include a statement that the job allows a worker to change position, something that was not noted by the last consultant who reviewed the vocational requirements.  Cousins's new analysis reiterated that the occupation required exertion involving no more than 10 pounds, keeping the occupation in the sedentary column, but as requested she added that the occupation now allows for a regular change of position from

sitting to standing to accommodate pain. Def.'s App'x ¶ 15. Cousins continued to acknowledge that the occupation required frequent sitting and travel, but Cousins did not address whether the exertional demands of frequent travel require prolonged sitting without changing position, or whether travel is itself necessarily a sedentary rather than a light endeavor. Instead, Cousins appears to have overlooked the matter, as Cousins observed only that the ability to change position would occur "in [the] work area," but did not mention anything about changing positions in a car or on an airplane. Pl.'s App'x ¶ 106.

In due course, Dr. Fitzsimmons provided Unum with an attending physician statement. In the statement, Dr. Fitzsimmons responded to the question of whether Barnes was able to perform a list of occupational demands, which list mirrored the sedentary classification and also included frequent sitting and travel, but Dr. Fitzsimmons did not address the position change modifications authored by Cousins. LTD 1026 (ECF No. 12-3). Dr. Fitzsimmons checked the box for a "no" answer but did not respond to the follow up question, "If no, please explain." Her statement, however, was consistent with the prior 20 years of claims assessments made by Unum's agents, including every physician and nurse Unum had tasked with a file review.

Unum then referred the matter to Sarah Martin, RN, and consulting physician, Rosemary Szollas, MD. Based on their review of the file, they concluded that Barnes had not provided Unum with evidence that she is precluded from the occupational demands set out in Cousins's revised vocational assessment. Dr. Szollas authored a letter to that effect and sent it to Dr. Fitzsimmons to explain the finding and to see whether Dr. Fitzsimmons might agree. The letter offered three possible responses. Dr. Fitzsimmons chose the "no

opinion" option. Evidently because Unum had so recently lowered the exertional component of the job description, Unum interpreted this to mean that no medical professional of record currently believed that Barnes could not perform the duties of the occupation as most recently defined by Cousins. According to Unum, this development was "critical" to its decision to terminate benefits. Def.'s App'x ¶ 26. Benefits specialist Shannon Burrows sent Barnes a letter informing her that she was no longer deemed disabled for purposes of Unum's LTD plan.

An appeal process followed, but not before Dr. Fitzsimmons sent Unum a clarifying letter and recent physical examination findings. In the letter, Dr. Fitzsimmons stated that she did not believe Barnes would be able to perform the occupation most recently described to her by Dr. Szollas, characterizing the softened job description as sedentary with an accommodation or sub-sedentary functionality.[5] LTD 1258, 1261 (ECF No. 38-4). Unum regarded this response as undeserving of any weight because Dr. Fitzsimmons had recently recorded in a treatment note that Barnes presented for care with disability forms in her possession. In the context of the ensuing appeal, turned reconsideration, turned renewed appeal, Dr. Szollas continued to paper the file, essentially explaining why she was not convinced by the available medical record before concluding with the observation that "appropriate ergonomic desk arrangement/ergonomic control would be reasonably

---

[5] Unum also bruits that Dr. Fitzsimmons' clarifying statement deserves no weight because she changed her opinion, and on that basis alone it had no other option but to deny benefits upon receipt of its own consulting physicians' assessments. Def.'s Mot. at 5, 17. However, the reasonable assessment of the record is that Dr. Fitzsimmons did not change her position but clarified her position in response to Unum's vocational gyrations.

expected to mitigate the concerns surrounding functional impairment due to prolonged sitting."[6] Def.'s App'x ¶ 39. In effect, the combined vocational dilution of the occupation's demands and the relative stability of the treatment modalities and attending physician input left, in Unum's view, but one possible outcome. Def. App'x ¶ 35; Def.'s Mot. at 5, 17. However, ostensibly to be sure, Unum brought in another physician, Crystal Bright, MD, to provide another assessment.

Dr. Bright framed her analysis of the record in terms of whether she concurred with Dr. Fitzsimmons or with Dr. Szollas. She concurred with Dr. Szollas, stating in relevant part that "the claimant's documented activities, physical exam findings, diagnostic test findings, and intensity of management and treatment did not reflect that the claimant was precluded from performing the outlined occupational demands noted above." LTD 1318 (ECF No. 12-6). However, in the summary section of her medical review that precedes the finding, Dr. Bright made no mention of the lumbar condition, identifying only the cervical condition and noting Barnes's ability to do such things as cook dinner and wash dishes and do light loads of laundry. To the extent she discussed the lumber condition, Dr. Bright did so only as part of a recitation of the "remote history" associated with Barnes's disability. LTD 1317.

Burrows promptly notified Barnes that Unum's reconsideration conclusion was to uphold the termination of benefits. The file was then transmitted to Shane Knox in Unum's appeals department. While the matter was in Knox's hands, both parties further

---

[6] With this remark, Dr. Szollas effectively conceded that she, too, held the opinion that the major impediment for Barnes was her inability to endure prolonged sitting.

supplemented the record, with Barnes providing further input from Dr. Fitzsimmons and Unum enlisting yet another physician, Steven Winkel, DO, to evaluate anything Dr. Fitzsimmons might contribute.  For his part, Dr. Winkel was keen to emphasize the non-intensive and non-emergent nature of Barnes's ongoing treatment plan some sixteen years after her last lumbar surgery, but also Barnes's ability to perform basic tasks associated with daily life.  Based on Dr. Winkel's input, Knox informed Barnes that Unum would uphold the denial of benefits.

In the final stages of the review process, now extending into 2023, Barnes retained counsel, her counsel then supplemented the medical record, Dr. Winkel reviewed the supplements and stood by his prior determination, and Knox, similarly, held firm.[7]  Knox also solicited further input from yet another vocational consultant, although this fact is included only in Barnes's narrative, not Unum's.  Specifically, Knox asked consultant Kelly Marsino to comment on whether Barnes's critique of Unum's repeated failure to expressly consider the demands of travel would change matters.  Marsino responded that the occupation called for regular overnight travel to service large customers with complex and non-standard contracts.  She opined that such travel would not make the job light rather than sedentary because documents like literature and brochures can be mailed to meeting locations and because airports provide transportation assistance, including assistance moving luggage and conveyances to assist a traveler incapable of walking significant

---

[7] Among the most recent records was a 2023 image of Barnes's abdomen depicting multiple senescent changes of the lumbar spine.  Pl.'s App'x ¶ 153.  Dr. Winkel rejected the evidence as potentially probative of disability because it did not image, specifically, either the lumbar spine or the left lower extremity.  Def.'s App'x ¶ 56.

distances. On this basis, Marsino concluded that travel would not increase the physical demands of the job. However, he did not assess the demands of frequent travel in terms of prolonged sitting or standing, such as the obvious requirement that one must remain seated in an aircraft or automobile. Pl.'s App'x ¶ 157; LTD 1415-17 (ECF No. 12-6).

## DISCUSSION

Barnes brings this civil action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1), seeking to recover benefits under her plan. Such a claim proceeds as a claim for judicial review of a final administrative decision. *Doe v. Harvard Pilgrim Health Care, Inc.*, 974 F.3d 69, 75 (1st Cir. 2020).

"Where, as here, the administrator of an ERISA plan is imbued with discretion in the interpretation and application of plan provisions, its use of that discretion must be accorded deference." *Colby v. Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesthesia Assocs. Long Term Disability Plan*, 705 F.3d 58, 61 (1st Cir. 2013). This ordinarily equates to application of the arbitrary and capricious standard of review familiar to administrative law, which mainly turns on the existence or nonexistence of substantial evidence in support of the administrator's decision in the administrative record. *Id.* Still, deferential review is not no review at all; an administrative decision must be reasonable. *Id.* at 62. Also germane to judicial review are circumstances in which the administrator either operates under a structural conflict of interest, serving as both the decision maker and the underwriter of benefits, *see id.*, or reverses course for no good reason after an extended period of awarding benefits, *Cook v. Liberty Life Assur. Co.*, 320 F.3d 11, 23 (1st Cir. 2003). A court

9

appropriately may weigh such circumstances when assessing the reasonableness of the administrative decision under review. *Id.*

Barnes argues that Unum issued an arbitrary and unreasonable decision in her case because the evidence of her disability is strong and was deemed sufficient for decades, and because Unum self-servingly redefined her former occupation to its own advantage, over-reacted to Dr. Fitzsimmons's short-lived, "no opinion" feedback, disregarded Dr. Fitzsimmons's conclusions based on a record reflecting a stable (but still disabling) condition, and then marshaled its agents to circle their wagons in support of an arbitrary claims decision. For its part, Unum emphasizes that it was Barnes's burden to demonstrate her disability in the administrative arena and is now her burden to overcome a difficult standard of review in the judicial arena.

I am persuaded by Barnes that she produced meaningful and probative evidence to substantiate her disability. However, that alone does not resolve the dispute, since it was Unum's prerogative to resolve conflicts in the underlying evidentiary record. Still, Unum's concerted effort first to tilt and then reject the record presented by Barnes (as well as its own, long-standing, contrary record of finding disability year after year, which is never addressed) was not only unreasonable but also arbitrary and capricious. There is no reasonable conclusion available on this record other than to find that the individuals administering Barnes's plan understood that the primary challenges for Barnes lie in prolonged standing and sitting. Although they went to great lengths to downplay the significance of these challenges through vocational inputs, it is evident that an occupation requiring frequent long-distance travel is not suited to someone who cannot endure

10

prolonged standing or sitting. So skilled are Unum personnel at assessing these kinds of considerations that their effort to emphasize positional changes in the work area as the fix can only reasonably be viewed as obfuscatory. Furthermore, although Unum's final vocational work around attempted to dismiss the demands of frequent travel based on airport conveyances and porter or stewardess assistance with bags, thereby, in its view, undercutting the difficulties related to long-distance walking and light rather than sedentary lifting requirements, it did not put to rest the patently obvious requirement of prolonged standing and sitting characteristic of travel.

The positional change accommodation articulated by Unum is more a tacit acknowledgment of disability than a fix, and no reasonable person whose calling involves disability claims processing could fail to observe that frequent long-distance traveling does not fit the bill. It is disappointing to review such an approach to claims handling by one of the nation's leading providers of long-term disability plans. All that I can assume on this record is that Unum hoped that nobody would notice, for even at the final stage of its vocational work around, the vocational consultant would not go so far as to suggest that the travel duties do not entail static standing and sitting demands.

"Once a court finds that an administrator has acted arbitrarily and capriciously in denying a claim for benefits, the court can either remand the case to the administrator for a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits." *Cook*, 320 F.3d at 24. For the same reasons as I found the administrative decision to be unreasonable, arbitrary, and capricious, I conclude that a remand for renewed

evaluation is inappropriate and that it is more appropriate to bring this matter to a conclusion with a retroactive reinstatement of benefits.

## CONCLUSION

Defendant's Motion for Judgment (ECF No. 27) is DENIED. Plaintiff's Motion for Judgment (ECF No. 26) is GRANTED. Judgment will enter for Plaintiff Lori Barnes. Unum is hereby directed to make a prompt retroactive award of past unpaid benefits and to reinstate Plaintiff's benefits.

SO ORDERED.

Dated this 12th day of November, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge